Carrick will ▮▮▮▮▮▮▮▮▮deem his property on the principles above sta▮▮▮

## BOWDOIN DECKER v. MARY CASKEY et al.

It is the duty of this court never to do justice by halves, to beget business for another court, or, when a cause is fairly within its jurisdiction, to leave open the door for farther litigation here or elsewhere.

It sometimes calls for the aid of a jury, (to ascertain material facts, when the evidence before the court is not satisfactory,) before, by its decree, it closes the door of litigation.

Questions of law and fact (as to the existence and validity of deeds, &c.) may be investigated and tried under the direction of this court, either by a feigned issue, or by an action at law, brought and prosecuted under the direction of this court.

Upon a bill by the assignee of a mortgage, against the heirs and executors of the mortgagor, and the widow and heirs of the father of the mortgagor, for discovery of a deed alleged to have been made by him to the mortgagor, for the mortgaged premises, prior to the execution of the mortgage ; which deed was not recorded, and was alleged to have been lost or destroyed ; and for the foreclosure and sale of the mortgaged premises. The mortgage was admitted by the defendants, and the evidence was sufficient to entitle the complainant to relief against the heirs of the mortgagor ; but the validity of the deed, and the title of the mortgagor under it, was denied by the other defendants, who claimed as heirs at law of the grantor : there was some evidence in support of the bill, as against them, but not sufficient to justify a decree against them, and afford the complainant the relief sought. The court would not make a decree for the relief of the complainant against the mortgagor only ; but directed an action of ejectment to be prosecuted in the supreme court by the complainant against the defendants, others than the heirs of the mortgagor, to try the questions as to the deed.

Form of directions for prosecuting an ejectment in the supreme court, under the direction of the court of chancery, to try questions as to the existence and validity of a deed under which the mortgagor derived title.

THE complainant is the assignee of a mortgage given by William Caskey to Joseph Chandler and David D. Chandler. The defendants are, the widow and heirs of John Caskey, the

Oct. 1831.

Decker
v.
Caskey et al.

administrators of William Caskey, and the heirs of the said William Caskey, who was one of the heirs of the said John Caskey, his father.

The complainant alleges in his bill, that in 1816, John Caskey, being seized and possessed of a farm, in the township of Wantage, in the county of Sussex, did, with his wife Mary, who is one of the defendants, execute, deliver and acknowledge a deed of conveyance in fee simple for the said farm, to William Caskey, his son; and that he, on the 31st day of May, 1819, mortgaged the same to Joseph Chandler and David D. Chandler, to secure the payment of a large sum of money, which yet remains unpaid: that John Caskey and William Caskey are since dead: that the deed from John Caskey and wife to William Caskey has not been recorded, was not delivered to the original mortgagees or the complainant, and that he has it not, and knows not where it is, or whether it is in existence: that the defendants, or some of them, have fraudulently possessed themselves of the deed, and have either concealed or destroyed it, and now pretend that William Caskey never had any right or title other than as tenant at will of his father and one of his heirs; and that the latter died seized of the premises, which thereupon descended to his heirs; and that his widow is entitled to dower, and to hold possession until her dower is assigned to her. The prayer of the bill is for discovery, and the production of the deed, or if lost or destroyed that it may be confirmed and established, and for foreclosure and sale of the mortgaged premises.

Mary Caskey, the widow, by her answer, admits that a deed was signed by her husband to her son William, for the premises; she denies that it was signed by her, and says when signed it was handed to her to be put away in a place of security: that she was told by the scrivener, in the presence of her husband and her son William, to take good care of it; that she and her husband need not give the deed to her son William unless they had a mind to, and that they could turn him off the property whenever they thought fit; thereby giving her, as she alleges, to understand that the property was still in her husband and herself, and not in her son William: that she took the deed into her possession with the knowledge and assent of all parties: that

the deed was never afterwards, with her knowledge, out of her custody, until some time after the decease of her husband, and before the decease of her son, she destroyed it as she supposed she had a right to do, conceiving it to be of no value, and fearing an improper use might be made of it : that her husband, when the deed was executed, was incompetent to dispose of his property ; and she insists she is entitled to dower.

Margaret Caskey, one of the daughters of John Caskey, in her answer, says, she was present and saw the deed from her father to her brother signed. After it was signed the scrivener handed it to her father or her mother, and told her mother to take care of it; that if William did not use them well, they could turn him away at any time, for the land was theirs ; William being present and making no reply or objection. She is well satisfied the deed was not at that time delivered to William ; that it was destroyed by her mother some time before her brother's death, and had never, so far as she knew or believed, been out of her mother's custody : that her mother, when she took the deed, put it in a drawer, where she frequently afterwards saw it. Her father was then incompetent, as she conceived, to make a discreet disposition of his property, and took no more interest or concern in it than a child. That she had some knowledge that a mortgage was afterwards given by William : that one day when her mother was out, and she in the cellar at work, hearing some strangers talking above, she went up, and found William and his wife, David D. Chandler, and Robert Carr, esquire, sitting around a table with some papers. Her father was in the room, but appeared to know nothing of what was doing, and did not at that time even know the names of his children. She insists that William never had any right or title under the deed, that the mortgage is void as to her, and that she is entitled to part of the premises.

John Caskey, Thomas Caskey, and John Z. Drake and Sarah his wife, filed an answer. They admit to have heard that, about the time mentioned in the bill, there was a deed made out for the property then owned and possessed by John Caskey, in favour of William Caskey, and that it was signed by John Caskey and was given to his wife without having been delivered to

William, and was afterwards destroyed by her; but deny all personal knowledge of these matters, and cannot say whether the information they have received was true. That they believe John Caskey, at the time of the execution of the supposed conveyance, was not competent to dispose of his property. They insist, that as against them, the said writing is void; that William had no title under it, and they, as heirs of John Caskey, are entitled each to a share of the premises.

Richard Caskey, another of the sons of John Caskey, by his answer, neither admits nor denies the allegations of the bill, and says he knows nothing of them from having long lived at a distance and out of the state, and insists upon nothing on his own behalf.

Some of the other defendants, being infants, have by the clerk of the court, as their guardian, ad litem, filed an answer in the ordinary form.

The other defendants have filed no answer.

Witnesses were examined, and the cause heard before chief justice Ewing, called to sit with the chancellor, who had been of counsel with one of the parties.

*T. C. Ryerson*, for the complainant;

*W. T. Anderson*, for the defendants.

At the present term, the following opinion was delivered :—

Ewing, C. J.   The evidence in this cause is quite sufficient to establish the allegations of the bill, and to entitle the complainant to relief against the heirs of William Caskey; for he made the mortgage in question of the whole premises to Joseph and David Chandler, by whom it was assigned to the complainant.

The evidence, in connexion with the answer of Mary Caskey, the widow of John Caskey, is stronger against her than against the remaining defendants, as she acknowledges that she destroyed the deed, alleged by the complainant, and which she admits was signed by her husband.   The *odium spoliatoris* has an

operation against her, which does not reach or affect them. Whatever might have been her opinion of the validity of the deed, or her estimate of its value, other persons were interested in it at the time she destroyed it; and she ought in justice to them to have preserved it, which, if invalid, would have given it no strength; or at least, before she destroyed it she should have warned them of her intention, and enabled them, by subjecting it to the inspection of disinterested persons, to obtain and secure thereby such evidence as their rights might have required or their interests demanded.

There is some evidence in support of the bill of complaint as to the other defendants, and yet there is not, in my opinion, sufficient evidence to justify a decree against them, and to afford the complainant the relief he seeks. On the relative weight of the evidence, I think it proper at present to express no opinion, from the course I have concluded I ought to recommend to the chancellor.

In the first place, I think there is some evidence of the material allegations of the bill, independent of the admissions in the answers, which ought to operate against those persons only by whom they were made. David D. Chandler testifies, that he had seen a deed from John Caskey to his son William, for the tract of land contained in the mortgage; that he had seen it in the possession of William, and that he drew the mortgage from that deed; that the deed was signed, as he recollected, by John Caskey and his wife, and acknowledged before Robert Carr, esquire, a commissioner for taking the acknowledgment and proof of deeds; that he examined the acknowledgment on the deed at the time he drew the mortgage, for the purpose of seeing whether it was properly done, and he thinks it was in the usual form, and supposed it was correctly done. The deed, he said, was a warranty deed, in the ordinary form of a deed of bargain and sale, with a money consideration. He farther testified, that William had been in possession of the premises from the year 1817, claiming them as his own. It appears, also, that William erected a dwelling-house on the farm, there being already one there in which his father and family lived, and also that he bought a barn and moved it on to the farm from an adjoining lot.

In the second place, there is not, as I have said, evidence sufficient, in my opinion, to justify the decree the complainant seeks. William lived on the farm, it is true, but so did his father and family up to the time of his decease. The management of the farm by William, may have resulted from the feeble and infirm state of health of his father. William told James Evans, one of the witnesses, there was a deed made out for him, but that the old people had possession of it, and that if he lived with them, and took good care of them while they lived, when they were done with it he was to have it. This information was given to Evans before the mortgage was made. The mother is living, and of course she is not yet done with it, yet the complainant seeks by his mortgage to foreclose and sell her interest, as well as the residue of the premises. William Caskey farther told Evans, on his death-bed, that when he got the deed to make out the mortgage, he took it from his mother's drawer, and when he had done with it he returned it again. David D. Chandler, who drew the mortgage, does not contradict this statement, although he does not directly declare or corroborate it. He got the deed of William, took it to his own house and there drew the mortgage; but he went to the old man's house to get it, and got it there, and whether William had then moved to the other house, or yet lived with his father, he did not remember. David D. Chandler says the deed purported to be signed by John Caskey and his wife, but he was unacquainted with their signatures, having never seen either of them write. He says it was in the ordinary form of a deed of bargain and sale; but what estate was conveyed by it, whether in fee simple, or for life, or for years, he does not say. If either of the two latter, it might yet have been in the ordinary form. If it be said, it may be presumed Mr. Chandler meant a bargain and sale in fee simple, I answer he has not said so, as he might readily have done if he intended it, and I do not feel authorized, therefore, to raise such a presumption and act on it. Mr. Chandler speaks nothing of the delivery of the deed. He says he examined the acknowledgment, and thinks it was in the usual form, and supposed it was correctly done; but he says he did not become a commissioner until the year after, and he was not clerk of the county until a subsequent time, and how far he

might then have been competent to judge of the correctness of an acknowledgment we have not the means to ascertain. Moreover, what was the usual form? How often do we see acknowledgments wholly defective? Why did he not state what the form was, and thus enable this court to judge whether it was apt and sufficient? If the reason is, because he could not remember the form, ought then what he says to suffice as evidence to establish so important a point? I am not willing to affect the rights and interests of these parties upon such vague testimony.

Under these views and impressions of the cause, the question recurs, what ought to be done? I am unwilling to recommend to the chancellor, at present, to make a decree for the relief of the complainant as against the heirs of William Caskey only; because it is the desire as well as the duty of this court, never to do justice by the halves—never merely to beget business for another court—and never, when a case is fairly within its jurisdiction, to leave open the door for litigation farther or in any other place, if it can possibly be here closed. It sometimes calls for the aid of a jury before by its decree it closes the door of litigation, and such I believe is now the proper procedure. If a decree against the heirs of William, as to the whole premises, or as to William's share as an heir of his father only, were now to be made, and the bill be dismissed without prejudice as to the rest of the defendants, the complainant would be left to seek his claims as to the rest of the premises, or as to the other parties, in another suit or in another court, and they would be exposed to further litigation. The questions of law and fact as to the existence and validity of the deed, so far as respects the widow and the other heirs of John Caskey, may be investigated and tried under the direction of this court, either by a feigned issue or by an action at law brought and prosecuted under the order of this court, to which resort is frequently had on proper occasions : *Newland on Ch. Prac.* 350. The proceeding by action is in the present case, in my opinion, more convenient and eligible than a feigned issue.

I do, therefore, respectfully recommend to his excellency the chancellor, to direct by interlocutory order, that an action at law in ejectment be brought and prosecuted in the supreme court by

the complainant, in the name of John Den, as his lessee ; that in this action the plaintiff declare for nine undivided tenth parts of the premises in question ; that the defendants in this cause, excepting the administrators and heirs of William Caskey, do appear thereto, and be made defendants therein, upon the exchange of the consent rules ; that the issue to be joined be tried in the circuit court in and for the county of Sussex ; and upon the trial, besides the ordinary confession of lease, entry and ouster, the defendants do admit themselves to have been in possession of the premises demanded at the commencement of the action of ejectment ; and also, that on and before the first day of November, in the year of our Lord one thousand eight hundred and sixteen, the said John Caskey was seized in his demesne as of fee, and possessed of the premises in question : that upon the return of the postea in the said action into the supreme court, the same be duly certified into this court ; that either party be at liberty, pending the said action, to apply to this court for directions therein, if need be ; and that all further equity, and the matter of costs, be reserved for a farther hearing, and for the final decree of the court of chancery in this cause.

The subscriber, called by his excellency the chancellor to sit with him in the aforesaid cause, in which he had been concerned as counsel of one of the parties, respectfully submits to him the foregoing opinion. Dated 20th September, 1831.

CHARLES EWING,
Ch. Just. Supreme Court.